NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0504n.06
Filed: July 18, 2007

No. 06-1776

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JAVIER MURILLO-MONZON, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

**Before: COLE and GILMAN, Circuit Judges; and MARBLEY, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Javier Murillo-Monzon pled guilty to illegally reentering the United States after having been convicted of an aggravated felony, incarcerated, and deported. In June of 2006, the district court sentenced him to 57 months of imprisonment, which was at the low end of the recommended Sentencing Guidelines range. Murillo-Monzon has appealed, arguing that (1) the sentence violates the Eighth Amendment, (2) the sentence violates the Double Jeopardy Clause of the Fifth Amendment, (3) the sentence is unreasonable, and (4) his trial counsel was constitutionally ineffective for failing to object to the scoring of his criminal history. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## I.  BACKGROUND

Murillo-Monzon, a native of Mexico, entered the United States illegally at some point in 1995.  He is married to Imelda Lopez, also an illegal alien, with whom he has three children.  The family currently resides in Detroit.  In November of 1999, he pled guilty to one count of conspiracy to possess marijuana with the intent to distribute.  He was sentenced by the United States District Court in the Eastern District of Michigan to 27 months of imprisonment, to be followed by 4 years of supervised release.  In October of 2001, he was released and immediately deported to Mexico.  His term of supervised release ended in October of 2005.

Murillo-Monzon admits that he illegally reentered the United States in October of 2002, while he was still on supervised release, in order to be reunited with his family in Detroit.  He was arrested by Michigan police on at least four occasions between December of 2002 and January of 2005 for driving with a suspended license.  Murillo-Monzon was also convicted in January of 2005 for larceny of property valued at less than $200 and again in August of 2005 on a drunk-driving offense.  On January 3, 2006, federal immigration agents became aware that Murillo-Monzon had been arrested in Troy, Michigan on another traffic-related offense.  He was then detained by federal agents after a review of his immigration file revealed no evidence that Murillo-Monzon had applied for or received permission from either the Attorney General or the Secretary of Homeland Security to reenter the United States.

In January of 2006, Murillo-Monzon was indicted on one count of being a deported alien who had reentered the United States without permission after having been convicted of an aggravated

felony, in violation of 8 U.S.C. § 1326(a)(2). He later pled guilty without the benefit of a plea agreement. In the Presentence Report (PSR), the probation officer calculated Murillo-Monzon's base offense level at 8, but added 16 levels for his prior drug-trafficking conviction. After subtracting 3 levels for acceptance of responsbility, the officer arrived at a net offense level of 21. The PSR also assigned Murillo-Monzon to a criminal history category of V based on: (1) his prior convictions, and (2) the fact that he had illegally reentered the country while still on supervised release from his previous felony conviction. Based on these calculations, the probation officer recommended a Guidelines range of 70 to 87 months of imprisonment.

Murillo-Monzon did not file objections to the PSR, but instead filed a sentencing memorandum in which he argued that the recommended Guidelines range overrepresented both his criminal history and his likelihood of recidivism. He suggested a sentence at the bottom of his proposed revised Guidelines range of 46 to 57 months of imprisonment—based on a criminal history category of III instead of V—or, in the alternative, a sentence of 36 months.

At the sentencing hearing, the district court engaged in the following analysis:

> The total offense level is 21, the criminal history category is V, making the guideline provision 70 to 87 months. These of course are advisory, not mandatory guidelines, but they are the beginning point from which I determine what a reasonable sentence is.
>
> I actually agree with the defendant that there is some over representation in this criminal history here. First of all – and I don't mean to minimize the drunk driving because it is a very serious offense, but there are a lot of points attributable to the drunk driving convictions.
>
> . . .

> And I believe that . . . the guidelines really count twice the criminal history and the aggravated felony, so overall, I believe that the criminal history is over represented by one level. I believe if you take this down to an offense level 21, criminal history level IV rather than V, that is 51 [sic] to 71 months, and I don't really see any other basis for departing from the guideline range or otherwise imposing a lower sentence. The 3553 factors I think don't add anything here to the, that I haven't already considered in the over representation of the criminal history.
>
> So I'm finding that the correct guideline range here is in fact total offense level 21, criminal history category IV, which would be 57 to 71 months, and thus pursuant to the Sentencing Reform Act of 1984, the Court, considering the sentencing guidelines and factors contained in [18 U.S.C. § 3553(a)], hereby commits the defendant, Javier Murillo, to the custody of the Bureau of Prisons for a term of 57 months.
>
> . . .
>
> I realize this is a very hefty sentence, and were I not feeling somewhat constrained by the guidelines, I might think something else was more appropriate, but I feel this is the proper sentence under the law.

This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review "a constitutional challenge to a sentence de novo." *United States v. Crowell*, — F.3d —, No. 06-5902, 2007 WL 1814333, at *4 (6th Cir. June 26, 2007). Where the defendant fails to raise his or her constitutional challenges in the district court, however, we will grant relief only if the defendant demonstrates plain error. *United States v. Legette-Bey*, 147 F. App'x 474, 488 (6th Cir. 2005). In order for us to find plain error, "there must be (1) error, (2) that is plain, and (3) that

affects substantial rights." *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005) (brackets and quotation marks omitted) (quoting *Johnson v. United States*, 520 U.S. 461, 466 (1997)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (citation and quotation marks omitted).

We review sentences under a reasonableness standard. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (citation omitted). In *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court held that the Sentencing Guidelines, which had previously been mandatory, are now advisory only. Accordingly, "a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of [18 U.S.C.] 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006). We accord a rebuttable presumption of reasonableness to a sentence imposed within the properly calculated advisory Guidelines range. *See Rita v. United States*, — S. Ct. —, No. 06-5754, 2007 WL 1772146, at *6 (June 21, 2007) (holding that a "court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines"); *see also Crowell*, 2007 WL 1814333, at *6 (same).

Finally, we review sentences for both procedural reasonableness and substantive reasonableness. *Collington*, 431 F.3d at 808. "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Id*. (quotation marks omitted). In contrast, a sentence may be considered substantively unreasonable "when the district court selects the sentence

arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id*.

**B.      The sentence does not violate the Eighth Amendment**

Murillo-Monzon first argues that "the length of his sentence is excessive and disproportionate to the severity of the crime of conviction and, as such, constitutes cruel and unusual punishment" in violation of the Eighth Amendment. Because he did not raise this argument below, we will not reverse his sentence on this ground unless Murillo-Monzon can demonstrate plain error. *See Legette-Bey*, 147 F. App'x at 488.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *United States v. Olan-Navarro*, 350 F.3d 551, 554 (6th Cir. 2004) (quotation marks omitted). This principle is not one of "strict proportionality between crime and sentence; instead, at most, only sentences that are grossly disproportionate to the crime are prohibited." *Id*. (quotation marks omitted).

Murillo-Monzon is unable to demonstrate that his sentence, although certainly substantial, is grossly disproportionate to the crime he committed. The maximum sentence under the relevant statute is 20 years of imprisonment. 8 U.S.C. § 1326(b)(2) (setting the penalties for a reentered alien "whose removal was subsequent to a conviction for commission of an aggravated felony"). Murillo-Monzon's sentence of 57 months' imprisonment was thus far below the maximum possible for the crime. Moreover, any Eighth Amendment claim that he might have asserted is foreclosed by our previous decision in *Olan-Navarro*. In that case, we affirmed the defendant's sentence of 57 months in prison for a violation of § 1326, an identical factual scenario to the present case. *Olan-Navarro*,

350 F.3d at 554. The 57-month sentence in *Olan-Navarro* represented the bottom of the same Guidelines range that is applicable here. *Id*.

Murillo-Monzon has made no effort to distinguish *Olan-Navarro*, other than arguing that it was incorrectly decided and raising his general challenge to the Guidelines calculation itself. Nor does he explain why the holding in that case is constitutionally deficient. His Eighth Amendment argument thus fails.

**C.     The sentence does not violate the Double Jeopardy Clause of the Fifth Amendment**

Next, Murillo-Monzon argues that the sentence violates the constitutional prohibition against twice being placed in jeopardy. He contends that he is being "triple-punished" for his earlier drug-conspiracy conviction because (1) the maximum sentence for illegal reentry increased to 20 years from 2 years due to the prior conviction, (2) his base offense level increased by 16 levels as a result of this conviction, and (3) his criminal history category was elevated because of the prior conviction as well as the fact that he committed the present crime while on supervised release from the earlier conviction.

The Double Jeopardy Clause of the Fifth Amendment "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *McKissic v. Birkett*, 200 F. App'x 463, 471 (6th Cir. 2006) (quoting *United States v. Dinitz*, 424 U.S. 600, 605 (1976)). Like his Eighth Amendment challenge, Murillo-Monzon's double-jeopardy claim was not raised below. Our review is thus once again limited to plain error.

None of Murillo-Monzon's Fifth Amendment arguments have merit. With respect to his enhanced penalty under 8 U.S.C. § 1326, the Supreme Court has "repeatedly" rejected double-

jeopardy challenges to recidivism statutes. *See Witte v. United States*, 515 U.S. 389, 400 (1995) (concluding that the defendant's double-jeopardy argument was without merit "because the enhanced punishment imposed for the latter offense is not to be viewed as either a new jeopardy or additional penalty for earlier crimes, but instead as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one").

Nor do the increases in Murillo-Monzon's base offense level and criminal-history score constitute double jeopardy. This court rejected a similar argument in *United States v. Crace*, 207 F.3d 833, 838 (6th Cir. 2000), holding that a prior conviction could be used to calculate both the base offense level and the criminal-history score because the two "are intended to reflect different concerns." "The offense level represents a judgment as to the wrongfulness of the particular act." *Id*. In contrast, "[t]he criminal history category principally estimates the likelihood of recidivism." *Id*. A prior conviction can thus be "used to establish both the wrongfulness of the instant offense and the defendant's potential for recidivism." *Id.*

**D. The sentence was reasonable**

Murillo-Monzon's third challenge is to the reasonableness of his sentence. He contends that although he was not detained by federal agents until August of 2005 for being a previously deported alien found in the United States, he actually committed the offense in December of 2002 when he was arrested by local law enforcement for driving without a license. As a result, he argues, no criminal-history points for crimes committed after that date should have been assessed.

Murillo-Monzon offers no caselaw to support this challenge to the criminal-history calculation, and he did not raise a timely objection to the PSR's calculation other than a general

argument that his criminal history was overrepresented. Moreover, under either an abuse-of-discretion standard or plain-error review, this argument fails. As the government points out, Murillo-Monzon waived any objection to the date of the actual offense by pleading guilty. *See United States v. Coeur*, 196 F.3d 1344, 1346 (11th Cir. 1999) ("[W]hen a defendant enters a plea of guilty to being 'found in' the United States on a certain date, the issue of when the offense was committed is settled, and the defendant may not later dispute that date.").

Murillo-Monzon would have been unable to successfully advance his argument even if he had not pled guilty. "The crime is *being* in the United States and is not limited to the instant at which a federal agent lays hands on the person and a light bulb in the agent's head illuminates the mental sign 'This guy's an illegal alien.'" *United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 460 (7th Cir. 2006) (holding that, under 8 U.S.C. § 1326(a)(2), the alien "makes *himself* a form of contraband: the offense occurs wherever he is, and in every district through which he passes") (emphasis in original). Any criminal convictions sustained by Murillo-Monzon between the time he illegally reentered the country in October of 2002 and the time he was arrested for the present offense are thus properly taken into account in calculating his criminal-history score and his base offense level for purposes of the Sentencing Guidelines.

In the section of his brief addressing the alleged Eighth Amendment violation, Murillo-Monzon argues that the district court failed to address the § 3553(a) factors and failed to make any findings on the record with respect to those factors. We will construe this contention as a challenge to the procedural reasonableness of his sentence. *See Collington*, 461 F.3d at 808 (holding that a "sentence may be procedurally unreasonable if the district judge fails to consider the applicable

Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a)") (quotation marks omitted).

In evaluating this challenge, we first note two comments made by the district court at the sentencing hearing that arguably support Murillo-Monzon's contention, though neither has been brought to our attention by his counsel. First, the judge stated that the advisory Sentencing Guidelines "are the beginning point from which I determine what a reasonable sentence is." This statement is partially incorrect. The district court is not charged with imposing a "reasonable" sentence. *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006). "Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *Id*. "Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task." *Id*. (emphasis in original).

Second, the district court acknowledged that it was imposing a "very hefty sentence," but that it was "somewhat constrained" by the Guidelines. This language could be construed to mean that the court felt that the Guidelines were more mandatory than advisory. A review of the entire record, however, shows that the court clearly understood the advisory nature of the Guidelines. We therefore assume that the district court simply meant that the Guidelines range was the starting point from which it then determines an appropriate sentence. *See United States v. Cage*, 458 F.3d 537, 543 (6th Cir. 2006) (holding that "the district court did not err in viewing the Guidelines as a presumptively reasonable starting point"). And in any event, Murillo-Monzon has waived any challenge that he might have had to these comments by failing to object to either of them when pursuing this appeal. *See Wu v. Tyson Foods, Inc.*, 189 F. App'x 375, 381 (6th Cir. 2006) ("This

court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

We now turn to the argument that Murillo-Monzon did raise. He contends that his criminal history was overrepresented in the Guidelines calculation recommended by the PSR and that, as a result, a lower sentence was appropriate. The district court, after reviewing the sentencing memoranda filed by both parties and listening to argument at the sentencing hearing, agreed with Murillo-Monzon that the criminal history category was too high, and decreased it by one level, from V to IV. It then made an explicit finding that the correct Guidelines range in light of this decrease in criminal-history level was 57 to 71 months in prison. After reviewing the evidence and concluding that there was no other basis for imposing a lower sentence or granting a further downward departure, the court found that 57 months was the appropriate sentence. That Murillo-Monzon is of the opinion, without legal support, that he was entitled to a further reduction in his criminal-history score does not render his sentence unreasonable.

Contrary to Murillo-Monzon's assertion, the record reflects that the district court did in fact consider the § 3553(a) factors and simply concluded that those factors did not add anything that had not already been considered by the court in the overrepresentation of Murillo-Monzon's criminal history. The court further concluded that it did not "see any other basis for departing from the guideline range or otherwise imposing a lower sentence." Just as in *Rita*, the record in the present case clearly reflects that Murillo-Monzon's "personal circumstances . . . were simply not different enough to warrant a different sentence." *See Rita*, — S.Ct. —, 2007 WL 1772146, at *13. "Where a matter is as conceptually simple as in the case at hand and the record makes clear that the

sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Id*. Moreover, "[t]his court has stated repeatedly that it has never required the ritual incantation of the § 3553(a) factors to affirm a sentence." *United States v. Esteppe*, 483 F.3d 447, 453 (6th Cir. 2007) (brackets and quotation marks omitted).

Although the district court certainly could have given a longer explanation for the sentence that it imposed had it chosen to do so, we conclude that its explanation was sufficient, especially in light of the Supreme Court's recent decision in *Rita*. Just as in *Rita*, "given the straightforward, conceptually simple arguments before the judge, the judge's statement of reasons here, though brief, was legally sufficient." 2007 WL 1772146, at *12. *Rita* simply requires "[t]he sentencing judge [to] set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id*.

In sum, Murillo-Monzon has offered nothing to rebut the presumption of reasonableness accorded his within-Guidelines sentence. *See Crowell*, 2007 WL 1814333, at *6 ("Because the district court sentenced Crowell within the advisory Guidelines range, his sentence is credited with a rebuttable presumption of reasonableness, and it is incumbent upon Crowell to establish that his sentence was unreasonable."). We therefore conclude that his sentence was reasonable.

**E.      Ineffective assistance of counsel**

Finally, Murillo-Monzon alleges that his trial counsel was ineffective for failing to object to the scoring of his criminal history. But we "will not ordinarily consider ineffective assistance of counsel claims on direct appeal because the record usually is not sufficiently developed to permit proper assessment of such claims." *United States v. Graham*, 484 F.3d 413, 421 (6th Cir. 2007).

Nothing in the record suggests that we should depart from our usual practice. We therefore decline to reach this claim.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.